﻿Citation Nr: AXXXXXXXX
Decision Date: 07/26/19 Archive Date: 07/25/19

DOCKET NO. 181022-2444
DATE: July 26, 2019

ORDER

The reduction for the Veteran’s service-connected coronary artery disease (CAD) disability rating from 100 percent since September 1, 2015, was proper; entitlement to a rating of 30 percent for CAD from September 1, 2015, is granted.

FINDING OF FACT

Since September 1, 2015, the evidence establishes that, at worst, the Veteran had a workload of less than seven METs which resulted in fatigue. The reduction from 100 percent was proper as the evidence demonstrated an overall improvement; however, the Veteran’s disability picture has more closely approximated the 30 percent rating criteria since that time.

CONCLUSION OF LAW

The criteria for a reduction in the Veteran’s CAD disability rating was proper; however, the criteria for entitlement to a 30 percent disability rating from September 1, 2015, the date after the Veteran’s disability evaluation was reduced from 100 percent, have been met. 38 U.S.C. §§ 5110, 7104 (2012); 38 C.F.R. §§ 3.400(o)(1)-(2), 4.104, Diagnostic Code 7006 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active duty service in the United States Air Force from June 1964 to January 1968 and again from August 1968 to October 1987. On his VA Form 9 substantive appeal, the Veteran requested a live videoconference hearing. Since that time, however, on May 9, 2018, the Veteran requested to have his appeal considered under the Rapid Appeals Modernization Program (RAMP) Higher Level Review. A RAMP decision letter was mailed to the Veteran in September 2018, at which time he elected to continue his appeal to the Board of Veterans Appeals (Board) with the Evidence Submission option. This option does not allow for hearings. As a result, his hearing request is deemed waived and the Board will proceed to adjudicate his appeal on the merits.

Entitlement to a rating higher than 10 percent for coronary artery disease; to include whether the reduction from 100 percent to 10 percent from September 1, 2015, was proper.

The Veteran seeks an increased rating for his CAD disability. The record reflects that in February 2012, he had a heart attack. He filed a claim for an increased rating in March 2012. 

By a May 2012 rating decision, he was granted a 100 percent rating for his CAD from February 25, 2012, to May 31, 2012, and for three months following his myocardial infarction. The rating decision assigned a 10 percent rating from June 1, 2012, based on: continuous medication required with additional symptoms of: one episode of congestive heart failure within one year; workload of greater than ten METs; and left ventricular ejection fraction of 55 percent. A September 2012 rating decision then granted a 100 percent rating; and a January 2014 rating decision continued that rating. This was based on a VA medical opinion whereby the examiner stated that it was unclear “whether your current functional disability is due to the non-service connected hip condition or your service-connected cardiac disability. VA treatment records show you underwent a left hip replacement in January 2014. We will reevaluate your cardiac disability in the future once your hip condition heals and cardiac testing can be completed to determine the current level of impairment.” 

Then, a November 2014 rating decision proposed to decrease the Veteran’s rating for his CAD from 100 percent to 60 percent. The basis for this decrease was a VA examination undertaken in October 2014 and VA treatment records which showed MET levels of greater than 3-5 METs; this is consistent with activities such as light yard work (weeding), mowing lawn (power mower); and brisk walking (4mph). 

A March 2015 rating decision proposed to decrease the Veteran’s CAD disability rating to 10 percent. In part, this was based on further review of the October 2014 VA examination report. The examiner stated that due to multiple factors, he was not able to accurately estimate the METs level limitation solely due to the Veteran’s CAD disability. Therefore, he stated that the METs value was not the best indication of cardiac function, but rather the ejection fraction from the echocardiogram, completed in October 2014, was the best indication. This value was reported at 55 percent. The echocardiogram showed a normal left ventricular size and normal wall thickness, normal right ventricular size and contractility, and normal left atrial and normal right atrial size. The Veteran’s disability rating was decreased from 100 percent to 10 percent effective September 1, 2015.

The issue is whether an increased rating is warranted at any time during the appeal period, to include whether it was proper to reduce the Veteran’s CAD disability rating from 100 percent disabling to 10 percent disabling from September 1, 2015. 

Because the Veteran was rated as 100 percent disabled due to his CAD disability solely prior to September 1, 2015, and was also in receipt of special monthly compensation (SMC) under 38 U.S.C. 1114, subsection (s) on account of coronary artery disease status post myocardial infarction rated at 100 percent and additional service connected disabilities of hypertension and mood disorder independently ratable at 60 percent or more from February 25, 2012, to September 1, 2015, the Board need not address whether a higher rating is warranted for this period as there is no available higher rating.

Instead, the Board will focus on whether the evidence since the Veteran’s heart attack showed improvement in the functional impairment caused by the Veteran’s CAD and to what extent. When considering all of the evidence of record, the Board finds that a 30 percent rating, but no higher, is warranted from September 1, 2015. The reduction in the Veteran’s rating from 100 percent following his heart attack was proper; however, when resolving all reasonable doubt in his favor, a reduction to 30 percent, as opposed to 10 percent, more closely approximates the Veteran’s CAD disability picture. 

Under Diagnostic Code 7006, a 10 percent evaluation is assigned for a workload greater than 7 METs, but not greater than 10 METs, resulting in dyspnea, fatigue, angina, dizziness, or syncope, or continuous medication required. A 30 percent evaluation is warranted for a workload of greater than 5 METs, but not greater than 7 METs, resulting in dyspnea, fatigue, angina, dizziness, or syncope; or evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. A 60 percent evaluation is warranted for more than one episode of acute congestive heart failure in the past year, or workload of greater than 3 METs, but not greater than 5 METs, results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. A 100 percent rating is warranted for chronic congestive heart failure, or when a workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. 38 C.F.R. § 4.104, Diagnostic Code 7006.

A note prior to the Diagnostic Code explains that one MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104, Note (2).

The evidence establishes that in February 2012, the Veteran had a heart attack. The regulations state that a temporary 100 percent rating is warranted for three months following a heart attack. The record shows that the Veteran continued to receive a 100 percent rating for his heart attack for almost three and a half years following his heart attack. At no point during the appeal period to from May 25, 2012, September 1, 2015, did the evidence show that the Veteran met the schedular criteria for a 100 percent disability rating for his heart. Instead, the RO continued the 100 percent rating beyond this three-month period based on an incomplete reading of the October 2014 VA examination report. That is, the RO considered the functional impairment caused by the Veteran’s hips as well as his heart on his METs levels. However, this is impermissible as the Veteran is not service-connected for his hips. It is worth noting that the Veteran was also in receipt of housebound SMC benefits, of which the evidence also did not establish were warranted during this time.

Regardless, throughout the appeal period from September 1, 2015, at worst, the Veteran’s VA treatment records establish that his METs, notwithstanding his hip issues, were estimated to be approximately seven METs. See February 20, 2015, VA Treatment Records. The examiner stated “the patient is limited in his current exercise tolerance. I would estimate that he is at less than seven METs in his activities. It is possible his exertional dyspnea may represent an anginal equivalent.”

The regulations state that over seven METs would warrant a 10 percent rating and under seven METs would warrant a 30 percent rating. As such, the Board resolves doubt in the Veteran’s favor in granting a 30 percent rating for the entire appeal period since September 1, 2015. A higher rating of 60 percent is not warranted, however. The evidence establishes that the Veteran continues to bike and use the treadmill for limited portions of time (March 2018 VA Treatment Records). He also uses the elliptical and hand weights (January 2018 VA Treatment Records). He enjoys bowling and golfing approximately three times per week (January 2016 Private Treatment Records). His main symptom is fatigue with exertion, which is certainly contemplated by the 30 percent rating. 

The Board acknowledges the lay statements submitted by the Veteran. Specifically, he stated “VA reasoning is that due to medicinal treatment, my heart is fully under control and not problematic for future heart problems . . . I was on heart medications when I had both heart attacks and the PE as a result of blood clot; therefore, just because I am on medications it does not mean that I am not in danger of further heart complications.”

Although the Board is sympathetic to the Veteran’s contentions and does not intend to discount the severity of his heart disability, the regulations only allow for functional impairment on the average earning capacity caused by a disability. Put differently, the regulations are meant to compensate Veterans for the actual impairment on earning capacity caused by the disability. The Board does not dispute that the Veteran’s heart disability may continue to worsen, however, the Board is precluded by the law from allowing a higher rating based on this possibility. Instead, the Board must rely on the evidence of record, which clearly shows that the Veteran continues to engage in activities such as golfing, weight training, bicycling, and bowling. His METs have not been found to be less than five such that a higher rating would be warranted. In addition, since September 1, 2015, there has been no demonstration of left ventricular dysfunction with an ejection fraction of 30 to 50 percent. 

When liberally reviewing the evidence of record, the Veteran’s heart disability picture most closely approximates the 30 percent rating criteria. At no point during the appeal period has the evidence established that a rating higher than 30 percent is warranted.

(Continued on the next page)

 

The reduction of the Veteran’s heart disability was proper; however, the appropriate reduction would be to 30 percent disabling, not 10 percent. To that extent, the appeal is granted.

 

H.M. WALKER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Martha R. Luboch, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.